All right. Campbell v. Boston Scientific. Oh, it is? Boston Scientific, yeah. Mr. Rogers. Still good morning. My name is Daniel Rogers. I represent the appellant to defendant below Boston Scientific Corporation. Your Honors, this is a prescription medical device product liability case, and we're appealing from some substantial verdicts and judgment after a four-plaintiff consolidated trial. This appeal currently concerns the judgments for two of those plaintiffs before the appeal and during the appeal. We've settled with two. We've raised two types of issues before the court today. The first are some case-specific judgment as a matter of law issues. We believe that the plaintiffs failed to prove their design defect claims, and nor did they prove their failure to warn claims under controlling West Virginia law. But we also have raised broader new trial issues, which potentially affect future cases arising out of this MDL and the other related MDLs. The first and principle one concerns improper consolidation of four fact-intensive medical device product liability cases. The record bears out substantial prejudice that occurred because of the consolidation, which was not justified just for expediency purposes. We also believe that precluding this prescription medical device maker from discussing the regulatory environment in which it operates and the government clearance it obtained to market this device deprived us of a fair trial in this case because it would have rebutted the plaintiff's main themes. They talked about how our product, the Optrix product, was different than the other products on the market to which we compared. You have a good many claims here, and you don't waive them at all by not mentioning them in oral argument. You still preserve them just by the fact that they're in your brief. So it might be best for you to just pick out what you think is your strongest point and just put the most emphasis on that, okay? I agree, Your Honor, and I'll go straight to the consolidation issue. I'm just trying to provide an overview, but I believe that the most important issue before the Court today is the consolidation issue. Okay. Tell us why. In this case, the judge consolidated these cases for trial sua sponte, before any discovery had occurred, and it was only because of the fact that they had the same product and they had it implanted within the same state, and therefore their claims were controlled by the same state substantive law. But those were really the only common issues in this case. And as this Court has held, you know, since the Arnold case back in 1983, consolidation or refusal to settle where prejudice occurs amounts to abuse of discretion, constituting reversible error. And that's what occurred here because there was substantial prejudice from the consolidation of these cases. So you think your strongest point is consolidation, which we review for abuse of discretion. Yes, Your Honor, I recognize that that is a discretionary decision. Well, the reason it was consolidated is, you know, you have all the plaintiffs were implanted with the same device. There was no difference in terms of the devices or the product that's there. The Optrix device, it was the same, yes, Your Honor. Okay, it was the exact same product. Correct. And all four of them failed, maybe for different reasons, but they seemed to result in severe injuries. It was similar in many respects. And it was the same, as I understand it, the same legal issues, and probably just as important, you have the same witnesses, the same BSC witnesses and documents. Why would we have the witnesses if they were the same, testify four different times? And your defense was the same. In each case, you had the same points you wanted to make about the impact of the 510K approvals process, and you wanted to make the point about the safety data sheet. So wasn't there a lot of commonality here that made it, at the very least, efficient to do these together, and wouldn't the separation you want, couldn't that have been accomplished as easily by an instruction, which the district court gave here, that warrants you to keep these cases separate, that each one is to be considered separately. That's, I mean, I know people say, well, what do efficiencies matter in the face of the higher end of justice and everything, and if we could give everybody a separate trial and every defendant a separate trial in some of these drug conspiracy cases,  There are practical limits in the world, and given the overlap in all these four cases, why was it an abusive discretion to try them together? Your Honor, you said a lot of things there. I'll try to address each of those points. First of all, the idea that if they have the same product and you've got the same company witnesses and the same defense that our product was not defective, that would lead to mass consolidation of all four rollover cases, all Marlboro cigarette cases. Well, it might be subject to abusive discretion. Okay, and your next point is? Your Honor, not all of these devices failed. That is just not correct. In fact, if you look at one of the plaintiffs, the doctor didn't believe her device failed, and she wanted the device cut, and the doctor said, I don't believe that's appropriate. You should not do that. And she adamantly demanded that the doctor do it, and he cut the device, and her urinary incontinence returned. And she then elected to have another mesh device, the same kind of sling device, implanted in her. That is not the same as any of the other plaintiffs. Did you get to bring that out? Yes, Your Honor. Did you get to bring out the unique features of these tests? Yes, Your Honor, and we tried to bring out as many unique features of the case, but that is not how the jury digested it because you could see how it manifested in the identical past compensatory damages verdicts. Even though a lot of them had different experiences, for example, you had a situation where one plaintiff... Let me stop you for a moment. I don't think the test is that they have to be identical in every facet of the case. It just has to be sufficient similarities just to warrant consolidation, and I get your point that her case was different,  in the larger context of granting sua sponte, consolidating the cases. But there doesn't need to be identical in all respects, Your Honor, but there has to be enough commonality that the individual issues don't get lost in the shuffle or get paramount, and that's what happened here. You had a situation, for example, with respect to Ms. Campbell. To Judge Wilkinson's point that our defenses were the same in each case, that's not precisely true because we had a comparative fault defense with respect to Ms. Campbell. How do you know they got lost in the shuffle? What do you mean by they got lost in the shuffle? Because the verdicts do not reflect what the evidence showed were the differences in each plaintiff's case. For example, you had... Well, let me say this. You don't think the verdicts reflect what the evidence is, period, do you? No, Your Honor. Isn't that right? Well, obviously, the company position... You're wrong on that count, and you certainly may feel that way. Would you feel better about all this if they'd awarded each succeeding plaintiff more money? A million dollars more in each case, would that make you feel better? No, Your Honor. Then the compensatory damages would be different. Oh, if all of them were a million dollars in difference? Then they had. Well, that would have shown that if there was evidence to support those differences, Your Honor, then that would at least show that there was no confusion. Okay, so your argument is here is we sure wish that jury had given each plaintiff a million dollars more than the other one? No, that's not. I believe that maybe they should be given less because of the circumstances didn't warrant it. I know, but you're trying to make that they... You're showing as a reason the jury didn't separate out is because the compensatory damages amount were the same. You say that's a bad thing, so I say had then the jury awarded Plaintiff 1 a million, Plaintiff 2, 2 million, Plaintiff 3, 3, and Plaintiff 4, 4 million, that would take that argument off the table, wouldn't it? It would have taken that argument off the table. It would take it off the table. As a way to show the jury... It's not a particularly strong argument, then, is it? Your argument is I wish we had the proof. I wish they'd given more money so this would strengthen our argument. Well, Your Honor, I don't think I'm saying they should be given more money. I understand your point is if the verdicts were different, would that have shown that there was individualized determinations? Yes, you would say yes. You would say yes. If the verdicts were different, I agree that that would take away part of our argument on jury confusion. I agree with that point, Your Honor. I can't agree that we would be happy with higher verdicts. I can't agree with that particular point, but I understand, Your Honor, and hopefully I've answered your question sufficiently. But in these types of product liability cases, you had a situation, for example, with Ms. Blankenship. She had a situation where the plaintiffs... But Judge Wilkinson asked you a question early on, and you answered it, and I believe that you told the truth. He said, well, you've given the opportunity to draw these distinctions. Were you given the opportunity to draw the distinction by questioning, by witnesses, and by jury argument? But, Your Honor, this was a time-limited trial, and so do we bring out every individualized difference, and do we bring the focus on those individualized issues? I can tell you, if that's the standard, we'd reverse every trial we ever had. Although, quite frankly, the last case we just had, a judge allowed three days for impeachment of a witness. A cross-examination, that's astounding to me. That's a lot of time. But people don't ever think they have quite enough time. That's why you have some control by the judge. But you were able to point out differences and argue that to the jury, I'm sure you were, weren't you? But we did draw up some of the individualized differences, but if you look at the totality of the arguments... I think Judge Shedd raises an important point there. Because did you feel like, at the trial itself, that you were cut short in your ability to argue differences among the different plaintiffs? I mean, was your presentation of evidence cut short? Because there were an awful lot of defenses and everything that could have been argued for all of the plaintiffs. I guess where you think the individuation comes up is in the damages suffered by the plaintiffs and perhaps the reasons for failure or lack thereof. Did you have a chance to talk about the different damages and the different pain, suffering, medical disabilities and everything that each plaintiff had suffered and that there may have been different reasons that things went wrong or that they didn't go wrong? Did you have a chance to develop that? Some of those issues came out, Your Honor, not as fully as they would have in individual trials. Did you object on the grounds that we have not had a chance to develop the individual cases? Not in that specific terms. We certainly objected to the consolidation and said that it would be prejudicial. We moved to sever because of that. And if you look at the totality of... I'm talking about not the pretrial motion dealing with consolidation and severance. I'm talking about during the course of trial itself. Did you object to the trial judge on the grounds that these cases are very different in several critical respects, Your Honor, and we need to really explore the individual circumstances here? Your Honor, we could not do that in this particular trial because of the procedural posture in which it came up. Because Judge Goodwin had entered the order on consolidation and entered the order on time limits, and Judge Berger, who tried the case, said she was going to strictly follow Judge Goodwin's rulings and that we should not re-argue those kinds of rulings. That wouldn't have precluded you at trial from pursuing individual circumstances. Nothing about the consolidation order would have precluded you at trial from presenting the cases as individual. Your Honor is correct that we did have an opportunity to bring out some of the individual issues. But if you look at the opening statements, if you look at the closing arguments, the totality of how this case was tried, because of the time-limited nature and the consolidation, the trial was all about the product. Did you make a proffer of something you wanted to offer that they wouldn't allow you to offer? Not on that particular issue, the consolidation. We did make some proffers, but not on the individual circumstances. Evidence presented on individual plaintiffs. If you say, Your Honor, we have a time constraint, we have much more we want to present, and I think you anticipate a judge to go, not going to hear it, then you would go, we're not going to offer a proffer. Here's deposition testimony. Here's an affidavit. Representation by counsel. But we have a doctor who's going to say that's absolutely incorrect. Is that in this record? That specifically, no, Your Honor. But we don't think that that was necessary in this particular instance because the consolidation created the prejudice, not because we couldn't bring out this single fact or this single fact. It was because those facts that were brought out got lost on the jury. That's what manifests in the jury confusion. Number one, because we know from empirical proof that that's what occurs. The social science studies. We didn't interview the jury, Your Honor. We didn't know about this jury. Did the jury award different damages in this case? Individual plaintiffs? Future damages were different. Past damages were identical. And some of the future damages were the same. Yes, there were different damages awarded. Two of the plaintiffs received identical damages, and then two of the plaintiffs received different future damages. Thank you, Mr. Rogers. You have some rebuttal time as well. Thank you, Your Honor. Mr. Magistro, let's hear from you on your side of the case. Thank you, Judge Wilkinson. May it please the Court. My name is Anthony Magistro. I'm here on behalf of the two remaining appellees in this case, Carol Campbell and Wilson. I think we should start with what the standard is. We talked a lot about this, and it's an abuse of discretion standard. But we didn't really talk in opposing counsel's argument about what the factors are. I think if you look at those factors, it's pretty clear that Judge Goodwin and Judge Berger didn't abuse their discretion in ordering these consolidated trials. The first factor, and this is from the Arnold case, where the risk of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues. As Judge Sedd pointed out, we have the same defendants' witnesses, the same defenses, and the other factors that go along in these cases, we have the same plaintiffs' experts. And when you get into the efficiency standpoint, when we talk about ordinary people who have to have these expensive experts hired, the efficiencies in consolidation are particularly appropriate. But I think the most important – That's a good point you raised, is that the expense of litigation simply from the plaintiff's standpoint and the amount of things that are going to – the amount of attorney's fees and everything, it's going to be much more expensive than any recovery the plaintiffs have. Correct, Your Honor. And if each one of these plaintiffs had to hire those same experts, go through those same trials, pay a trial team to stay in West Virginia for two weeks, those are extra expenses when balanced against this sort of hypothetical prejudice that the defendants raise. In retrospect, Judge Goodwin reached the right decision. Now, defense counsel is arguing that he just consolidated these cases at the front end without any real analysis about how they were the same. They all involved the same product. They all involved people who were implanted in West Virginia, so West Virginia law applied. As the cases – Originally, there were, I think, 11, 12, I can't remember exactly, cases in this consolidation order. Those cases settled, were removed. You get down to this trial, you only have four. So when you look at those four, we're not talking about tens, hundreds. I mean, as best as trials, they consolidate many more cases than that traditionally. Consolidation is a function of mass litigation. And so we're down to, at the time of trial, four specific cases. Plaintiffs with similar injuries. If we say this was an abuse of discretion to consolidate places with as many similarities as this, it would have quite a ripple effect in mass tort litigation. Well, I suspect Judge Goodwin would probably retire because he has 100,000 of these vaginal mesh cases. He might be hit with massive retirement. But just from a standpoint of thinking about the people that go through a trial and spend their time and energy on it, if you had to have the expert witnesses and other witnesses testify to essentially the same thing four different times, I mean, I guess, you know, at some point you just get really tired of hearing yourself talk. And what you're doing is saying the same things over and over again. And in jury trials, we ask good citizens to take their time and out of their daily lives to come and help us out. They're wonderful to do so, but to ask four times as many people to interrupt their lives, that's troubling too. I mean, they're human costs to all of us with respect to the witnesses and the jurors that we really can't do without. We don't want to make it harder rather than easier for them. That's right. And I think it's important to put this case... You know, I'm sitting here thinking about this, listening to all of this. I know money is an important thing. Money is very important. But in criminal cases, people's freedoms are at risk. And we routinely ask a jury to sit and listen to a case involving 5, 10, 15, I've had as many as 28 defendants. When you start a case, get down to 18, and we expect the jury to be able to sit there and with the help of their lawyers, differentiate between defendant 1, 2, 3, and 4, where their freedom is at stake. I don't think it's any... that's routinely happened. Yes, sir. Because if you were here earlier, we were talking about severances aren't normally granted, and they aren't normally granted. And I can't see how anybody thinks it's beyond the pale. Maybe you'll correct me on this. They expect the jury to sit there and figure out the different people. By the way, did the plaintiffs all testify? Yes, yes, sir. So in other words, the jury was able to put a person with that story? Yes, sir. Just for my edification, I don't know. Could the jury take note? Yes, sir, I believe so. And you raised a question of was there sufficient time to get out the differences? And I think the best evidence that there was is the defendant's reply brief. On page 13 and 14, they have this handy chart listing all the differences in the plaintiffs. It supports their argument that consolidation was inappropriate. But it's clear that the record, at least in this case, has all of those major differences that they raised. And I think looking at the verdicts... Let me ask you about that because I certainly don't disagree that a district judge has a lot of discretion here when it comes to consolidation. But how likely do you think it would have been that the past compensatory damages would have been identical in separate trials? Well, are we talking about... My question for you, Judge, and I hate to answer a question where the question is, is I think there might be a difference if you're talking about separate trials with separate juries or the same jury. I'm talking about what the other side wanted, that is a whole separate trial. They would be different. They might have been higher. They might have been lower. Is that at all troubling? No, because what you had is... It's important what we're talking about. We're not talking about lost income or breach of contract action where you can identify what the damages are. We're talking about non-economic damages that everybody evaluates differently. I tell my clients, you know, some people may say this is worth $10. Some people may say this is worth a million dollars. So the fact that these same six people came to the same analysis of what generally the same pain and suffering was and rounded it to one number... These were all non-economic damages that were similar? I mean, weren't there other items of compensatory damages at work here? No, these were all non-economic damages. I mean, why weren't there hospitalization costs and lost wages and the like? I was not trial counsel, but my understanding is trial counsel made a strategic plan. I understand trial counsel made a strategic decision that there's a line of thought that juries will award more money if you don't put those hard numbers in. And so that was a strategic decision that the plaintiffs made. But there was not a request to award medical bills. There was not a request to award lost income. In terms of pain and suffering, don't people react even to the same injury like this differently? Some plaintiffs might be severely traumatized and others might get past it more quickly. And, you know, a defendant's stuck with a thin-skulled plaintiff. But there is a difference in the trauma and suffering and the duration of the effects of something like this. And wouldn't that differ from plaintiff to plaintiff? It could, and it may just all balance out in the wash. And I think that's what the jury did here. It could be that when those six people sat down, somebody goes, well, I think plaintiff one deserves $1.8 million. The other one says, well, I think that she deserves $1.2. And one, listen, we don't know. One jury might go, I've been telling you as a matter of fact, nobody gets more than a million dollars. We don't know what that calculus is. It looks to me like when you look at the total numbers awarded, weren't these plaintiffs awarded different numbers? Yes. Gross numbers. Yes, and the difference – Might that be where the differences play down? And maybe so. And I think what's really important is the argument you don't hear from the defense that any one of these verdicts was excessive. Yeah. And so if you – And it really is, you know, when we look at criminal verdicts and everything, we don't try to unravel the jury verdicts for internally inconsistency. What we look at in the criminal sphere is the individual defendant, individual defendant by individual defendant, and say, well, is the evidence okay as to this person? And so I'm not sure why we shouldn't forswear a comparative approach in the civil context, too, and just look at the individual complaints and not compare it to the other people, but just say, is it wrong here, and is it unjustified here, and is it unjustified there? And the argument I understand the defense to be making is, well, it's just totally wrong that they're all the same. Well, maybe so, but also maybe not, because maybe when you get into the individual cases, there's a basis for what the jury did in each one of them. And I think the evidence would support that difference, and the fact that the jury awarded different amounts in future damages shows that they're paying attention to the different cases. And I think, you know, and this is what Judge Goodwin said in the post-trial motions is, their argument is backwards. They're looking at the result and trying to say, because of this result, that's evidence of prejudice. That's not what they have to show. They have to show there was prejudice and it led to a result, not the reverse. And, you know, this is not – this kind of consolidation is not anything that is unusual in mass torts. In fact, this same – I'm sorry. With my question, I tried to point out the point you just made. They're very concerned they're the same, so would they be happy if there was a multiplier effect for each million? Under their argument, they would say, well, at least they've made a difference. They looked at it differently. I don't think that's what they really want, and I think you have to – I really think that Judge Wilson asked a very good question, which I think was on top of the point you were going to, which is complaining about excessive verdicts. Exactly. That's exactly what he picked up. I mean, I think we can just look at the record of these vaginal mesh cases. This is the second case I've gotten to argue before your honors arising out of this MDL. The first one had a 7 to 1 punitive damage ratio, which this court affirmed, which there's a lot of different results that you can get. I mean, a million dollar punitive damage award on these facts was a gift, we believe. The same plaintiff experts were used for each of the four plaintiffs here in this case? Yes, the liability experts. I thought the plaintiff might claim some prejudice because it seems to me that it would be perhaps that the jury, thinking this guy always gets up, or woman, always gets up and says that, always gets up and says that, always seems to me that might hurt the plaintiff, and maybe it did somewhat. You could have a, Judge Shedd makes an excellent point. You could have the argument in reverse saying, well, they were all the same. That's prejudice to us because some of my individual clients deserve far more. So we're the ones that have been prejudiced. So, okay, I mean, it's a double edged sword on that. And I just can't figure out what he did wrong. It seems like so many of the evidentiary questions are pretty good trial here, and it seems like so many of the evidentiary questions are covered directly by our precedent, regardless of how we would treat the 501k process as a matter of an issue. So that question's been decided in our court, and the Sisson case is just right dead on point. That was my case, your honor. I remember it well. Yeah. So it's, you know, he. The other point I would make in terms of these issues is that this court can take some solace in affirming this verdict because one of these cases against this defendant with another consolidated trial happened in Miami about the same time that this trial was going on. Judge Goodwin went down to Miami, had Judge Berger try this one. Eleventh Circuit affirmed, rejected the 510k argument, and rejected the very same consolidation argument. He ran a good ship. We don't have any further questions. Okay. Well, I appreciate your honor, as always, your honors, listening to me and happy to be here, and thank you. We'd ask that the judgments be affirmed in their entirety. Mr. Rogers? I don't mean to disparage your argument by just saying it's a tough case to make. Understood, your honor. So I have a couple of points I would like to make. First, with respect to the criminal analogy, we believe that's not on point here because, you know, and I'm not a criminal practitioner, you know. I mean, when I clerked, I dealt with some criminal cases, but I've been a civil lawyer mostly. But it's my understanding that those consolidations usually occur when the defendants have some sort of factual relationship to each other. It's not a situation where they're consolidating their trials. They claim they don't. They're all at least charged in the same conspiracy. They claim they don't. All right. Understood, your honor. This case, the plaintiffs were all strangers to each other. None of them had any relationship to each other whatsoever other than the fact that they're the same club. Can I tell you this much? I don't know what your experience was. I've tried conspiracy cases in federal court, and people will want to work a plea deal, and an off-the-street criminal defendant won't take a conspiracy plea because he goes, I don't know eight people named in that. I know one or two of those, but the other eight, I don't know them. I've never seen them. I don't have any idea what you're talking about. They don't have anything in common with them at all. And I'm sure somebody says something different, like the government. No, no, absolutely not. They explain to them why under a legal theory of conspiracy they don't have to know. But legally they're all interrelated. Understood, your honor. Let's go beyond. The other parts of the consolidation issue that we haven't talked about yet and the prejudice that occurred that we haven't talked about has to do with the plaintiff counsel's improper use of consolidation to prove liability in their cases. If we look to their argument to the jury, all different, all the same product, all on a journey, just at different stages. So they're using the fact that all these plaintiffs have different experiences. That's not the problem of consolidation. That would be a problem of misuse of consolidation. Do you think that was appropriate to make that argument? No, your honor. Did you object? No, your honor. We would not object because it's a byproduct of the consolidation. That argument could only have occurred because of the consolidation. Because it's backwards. Just because it could only be made because of consolidation doesn't mean it's justified by the fact of consolidation. It doesn't. And if you thought you tried this case or somebody tried it, did you try it? My partner tried it. Okay. So you tried it and they thought an improper jury argument was being made based on the consolidation and they didn't object? Is that what you're saying to us? Your honor, it was made very clear to us that we were not to make further inroads and objection into the consolidation arguments. But I understand your honor's point. Let's talk about the individual. The other thing that we haven't talked about is the individual evidence that was allowed to be brought into the case that might have been relevant to some of the plaintiffs and not others. And this evidence was brought in, for example, reportedly to show notice. But that notice occurred. See, now you're meeting yourself going and coming. Your initial point was that everybody was lumped together. And then when there's individual evidence, you say that that was prejudicial. But it was the individual evidence that they brought up that was relevant to some but not to others. So you're making two contradictory arguments in the course. You see what I'm saying? I understand your point, but I disagree, Your Honor, respectfully. I do not believe that's how it was used during the trial. It was not used as an individualized issue to say that Boston Scientific had notice of this issue, which relates to this specific plaintiff. It was argued generally that Boston Scientific had notice of this particular issue and they should have said something about it. We asked for an instruction to the jury to say that evidence only goes to plaintiff one. Did you do that? No, Your Honor, because we argued before the trial that's exactly what occurred. It would have led to an impractical trial where our time, limited time on the stopwatches would have been used up every single time. You made the decision not to object to what you thought was a clear error. That's not by consolidation. That's presentation of evidence in a consolidated trial. It's two entirely different things. And it seems to me it is a far, far mountain to climb that you say, Your Honor, we have a consolidation and therefore we thought we couldn't object to everything the judge did that was prejudicial and improper. Is that your argument? Your Honor, then it would have been every 15 minutes, Your Honor, objection, we request a limiting instruction that this is only relevant to this plaintiff. And in this type of trial, that would have been impractical to do, to keep re-raising the same issues over and over again. Your Honor, he asked for a bench conference. Could you make the point that we get evidence in a consolidated trial and it goes only to different people? Weren't there limiting instructions in this case, during the trial of the case? I see my time has expired. Were there? There were general instructions given to the jury that they should have treated the cases separately. Is that what I call a limiting instruction? Is that what you call a limiting instruction? That this evidence is used for. Keep the people separate. Be sure you keep them separate. Your Honor, as I understand a limiting instruction, is that what you're saying? Was that done? That the court made clear these are separate plaintiffs and you need to keep the evidence separate? It generally said that, yes, Your Honor, but not specifically as to this piece of evidence only relates to this plaintiff. Thank you, Your Honor. We respectfully request that we reverse for fair trials. Thank you very much. Before we adjourn court, you go. Please be seated. Before we adjourn court, Judge Shedd didn't want me to do this, but I want to do it anyway. He's got such a wonderful family, his wife Elaine, his daughter Sarah, and I just want to say whenever they're present, it makes for a much nicer occasion and a much nicer day. We're so glad you're here. It's just great to see you. He said that because he thinks if you're here I'll behave myself. Let's adjourn court now. We'll come down and get counsel after that. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Albert Diaz